## PAYNE v. RAMSEY, *Sheriff*.

No. 1209.. Opinion Filed November 18, 1911.

(120 Pac. 595.)

1.  **INJUNCTION—Restraining Order—When Granted.** An injunction will not be granted, when the right to maintain the action is put in issue, unless the petition clearly shows that petitioner is legally authorized to prosecute the action, and is entitled to the relief sought.

2.  **EXECUTION—Injunction—When Maintainable.** Injunction will not lie to prevent the levying of an execution on personal property, where the judgment upon which the execution is issued is admitted to be valid and enforceable.

(Syllabus by Brewer, C.)

*Error from District Court, Muskogee County; John H. King, Judge.*

Action by R. T. Payne against R. B. Ramsey, Sheriff. Judgment for defendant, and plaintiff brings error. Affirmed.

*S. V. O'Hare,* for plaintiff in error.

*Allen & Nichols,* for defendant in error.

Opinion by BREWER, C. This cause comes here for review of the action of the district court of Muskogee county in vacating and dissolving a certain restraining order.

On July 9, 1909, plaintiff in error, as plaintiff below, and hereafter called plaintiff, filed a petition for an injunction against

defendant in error, defendant below, hereafter called defendant, in which he stated substantially and in brief the following: That on or about ——— day of November, 1908, he was duly appointed as trustee for W. H. Smith Son & Co., a corporation doing business in Muskogee, which company had made an assignment for the benefit of its creditors. That defendant, R. B. Ramsey, is sheriff of Muskogee county. · That on May 30, 1908, the W. H. Smith Son & Co. made an assignment to C. R. Bernard, of St. Joseph, Mo., of all its property for the benefit of all its creditors, and that Bernard took control of the property. As regards his trusteeship and authority in the premises, plaintiff says: Plaintiff further states that on or about the ——— day of November, 1908, the said C. R. Bernard resigned his position as such trustee, which said resignation was duly accepted, and that the plaintiff herein was appointed as such trustee in the place of the said C. R. Bernard.

Plaintiff then alleges, in substance, that Lewis A. Crossett, incorporated, was one of the creditors of the Smith Company; that Crossett Company had reduced its claim to judgment in the county court of Muskogee county in the sum of $515.36; that on the 16th day of June, 1909, the said Crossett Company had execution issued against the Smith Company on its judgment; and that the execution was placed in the hands of defendant, Ramsey, as sheriff, for levy.

The plaintiff then alleges in substance: That the Crossett Company had received on its indebtedness from the Smith Company, after the appointment of the trustee, the sum of $64.42, and that the Crossett Company received said sum · with full knowledge that the same was made as part payment of the sum due them; that the Crossett Company acquiesced in the appointment of the trustee, and received benefits under the trust, and thereby ratified the same; and that because of same it was estopped from proceeding to levy on and sell the property of the Smith Company in the hands of plaintiff as trustee.

Plaintiff proceeds, in substance, that the defendant, as sheriff, is about to levy said execution, and intends to seize the prop-

erty "in the possession of said W. H. Smith Son & Co., acting as agents of this trustee;" that, unless said defendant is restrained by the court, he will seize and sell the property belonging to this trustee, to satisfy the judgment, etc.; that such action will work irreparable injury to the plaintiff, as trustee, will cause him useless and expensive litigation, annoyance, etc.; that since plaintiff has been trustee he has been conducting the business of the Smith Company for the benefit of all creditors, and has the said Smith Company, as his agents, operating the said mercantile establishment; and that to levy the execution will result disastrously to the creditors, etc. Plaintiff prays for restraining order. This was granted by the county judge, in the absence from the county of the district judge.

The defendant filed a motion to vacate and set aside the restraining order, and set up the following grounds:

"First. Because the writ of injunction will not lie; there being a proper and adequate remedy at law."

"Second. Because the bill for an injunction filed herein does not state facts sufficient to constitute a cause of action, or facts sufficient upon which to base an injunction order."

"Third. Because the plaintiff herein, trustee or assignee, has no legal capacity, and is not a trustee or assignee in law or fact, so far as this defendant is concerned, or so far as Lewis A. Crossett, incorporated, is concerned: (a) Because no true inventory was made by W. H. Smith Son & Co., under whom said pretended trustee claims, as is provided by law. (b) Because said inventory was not filed with the register of deeds of the county, where the said pretended assignor resided. (c) Because the said inventory was not filed with the register of deeds of Muskogee county. (d) Because said plaintiff herein has never given bond to the territory or state of Oklahoma, in any amount, approved by the said district court, or the judge thereof, conditioned as is provided by law; nor has he given any bond of any character."

"Fourth. Because said Lewis A. Crossett, incorporated, upon the payments mentioned in paragraph 5 of plaintiff's bill filed herein, receipted for said payment as a general credit on their bill against Smith Son & Co., and specifically refused to acquiesce in the appointment of said trustee, and refused to ratify said appointment or authority."

On the hearing of the motion to vacate the restraining order, the plaintiff, in open court, stated into the record the following admission of facts:

"Plaintiff admits that there was no inventory made by W. H. Smith Son & Co. Plaintiff further admits that there was no inventory filed by W. H. Smith Son & Co. with the register of deeds of the county where said pretended assignor resided, Plaintiff further admits that there was no inventory filed with the register of deeds of Muskogee county, or with the register of deeds of any other county. Plaintiff further admits that no affidavit was made by the said W. H. Smith Son & Co., or by any one else in their name, or by any agent, assignee, or trustee of said company, and filed with the inventory. Plaintiff further admits that no assignee, nor any pretended assignee, of said Smith Son & Co. ever gave bond to the territory or state of Oklahoma, in any amount, approved by said district court or the judge thereof, conditioned as is provided by law; nor was any bond of any character ever given or executed or approved by said district court or judge thereof. Plaintiff further admits that no bond was ever given to the state or territory of Oklahoma, in any amount, by any trustee or pretended trustee of W. H. Smith Son & Co.; nor was any such bond approved by said district court or judge thereof, conditioned as is provided by law. Plaintiff further states that the deposition of Willard H. Thayer, heretofore filed in case No. 156, in the county court of Muskogee county, Okla., entitled 'Lewis A. Crossett, Incorporated, Plaintiff, v. W. H. Smith Son & Co., Defendant,' may be read in evidence in this case as an affidavit by said defendant herein, and said plaintiff hereby waives its formal introduction of said deposition."

The deposition of W. H. Thayer was introduced, from which we quote the following excerpts:

"Q. What are your duties as assistant treasurer and general manager of the plaintiff corporation? A. I have charge of the finances, books, credits, and a general oversight of the factory, and the shipping of goods; in fact, a general oversight of the entire business. Q. To your personal knowledge, did the plaintiff have any knowledge of the appointment of a trustee, or any trusteeship, as regards the affairs of W. H. Smith Son & Co. after April 15, 1908? A. Yes; it was in the scope of my duty, as assistant treasurer of the corporation, to have charge of such matters, and the knowledge came to me after April 15th that

a trustee was appointed in connection with the affairs of the defendant. Q. Did anybody else have charge of the trusteeship of the defendant's affairs, as far as related to the plaintiff, excepting yourself? A. I had special charge of this matter between the plaintiff and the defendant, and the correspondence relating to the trusteeship of W. H. Smith Son & Co. Q. State what, if anything, the plaintiff did, as regards the trusteeship of the defendant's affairs? A. The plaintiff received notice through third parties of the trusteeship in regard to the affairs of the defendant, and placed the matter in the hands of their attorney, Thomas A. Sanson, Esq., Muskogee, Okla., with instructions not to accept the trusteeship, and not do anything that would, in any way, affect plaintiff's claim against the defendant. Q. Did the plaintiff ever accept the trusteeship of the defendant? A. No; the plaintiff never accepted the trusteeship of the defendant. Q. Did the plaintiff ever agree to the trusteeship of the defendant? A. The plaintiff never agreed to the trusteeship of the defendant. Q. Did the plaintiff ever authorize anybody to agree for it to the trusteeship of the defendant? A. The plaintiff never authorized anybody to agree for it to the trusteeship of the defendant. Q. Did the plaintiff ever authorize Thomas A. Sanson to agree to the trusteeship of the defendant, as regards the plaintiff? A. The plaintiff never gave Thomas A. Sanson, or anybody else, any authority to agree to the trusteeship of the defendant, as regards the plaintiff. Q. State what you know of your own knowledge as to the authority given by the plaintiff to Thomas A. Sanson? The authority given to Mr. Sanson was not to agree to the trusteeship, and not to do anything that would, in any way, affect the legal rights of the plaintiff, as against the defendant in the matter in question."

Plaintiff in error begins his argument with an admission that none of the statutory requirements governing assignments for benefit of creditors had been complied with. His contention is that, though invalid, the assignment may be validated by an acquiescence in its terms by a particular creditor. His argument, and the reasons he urges for a reversal of this case, are predicated on the sole proposition that this invalid assignment could be ratified and made valid by the acquiescence of the creditor, and that in this case it had been so ratified, and that therefore the creditor was estopped from levying an execution.

The defendant urges a number of reasons why the judgment, of the trial court in dissolving the injunction should be sustained. Among others, the following:

"Because the writ of injunction will not lie; there being a proper and adequate remedy at law.  *  *  *  Because the petition does not state facts sufficient to constitute a cause of action, or facts sufficient upon which to base an injunction order. *  *  *  Because the plaintiff herein, trustee or assignee, has no legal capacity, and is not a trustee or assignee in law or fact, so far as this defendant is concerned, or as far as Lewis A. Crossett, incorporated, is concerned."

First. The petition in this case does not allege that the injury or threatened injury—levying of an execution—is not susceptible of adequate compensation in damages. It does not allege that defendant, or Lewis A. Crossett, incorporated, the execution creditor and moving party in the execution, are insolvent, or could not be compelled to respond in damages. As a general rule, where a threatened injury will be irreparable, as shown by the nature of the act proposed to be done, or the injury is such that it cannot be adequately compensated in damages, or where the damages which may result cannot be measured by any certain pecuniary standard, or where it is shown that the party, liable because of his insolvency, is unable to respond in damages, an injunction will lie. But a petition which fails to show any of the other requisites for the interposition of equity, and fails to allege the insolvency of the defendant, is fatally defective.

It is elementary that all three allegations are essential to entitle plaintiff to a temporary injunction. *Bracken v. Stone et al.,* 20 Okla. 616, 95 Pac. 238. In the case just cited, the court said:

"The threatened trespass sought to be enjoined cannot be shown to be irreparable, unless coupled with the allegations of the insolvency of the defendants, and the absence of it renders the complaint fatally defective."

While the petition states that the acts here stated will result in irreparable loss, etc., in this case the mere stating of this conclusion by the pleader is not sufficient. 10 Enc. Pl. & Pr. (page 954) says:

"A general allegation that the acts apprehended will be irreparable, unattended by such a statement of facts as enables the court to see that such will be the result, is insufficient. The pleader must not content himself with a mere averment of his conclusions, but must show how the irreparable injury apprehended is to arise, by giving a full and detailed statement of the facts and circumstances, the nature and condition of his property, etc., so as to enable the court to determine the necessity for an injunction."

If the plaintiff in this case has an interest in the property, by reason of being either trustee or assignee of Smith Son & Co., what would prevent his protecting himself and his possession by the ordinary proceedings at law? And if the sheriff or the execution creditors for whom he was acting, converted part of the personal property to their own use, why should it be difficult to measure the amount of the damages, if the taking was wrongful? When personal property is wrongfully taken, damages are supposed to be sufficient compensation for all injury done.

Second. The next proposition tests the sufficiency of the petition. Does it show facts sufficient to justify the granting of the writ? If it does not, it was properly dissolved because of this fact, and should never have been issued. And, in considering this question, it is urged that the plaintiff has not in his petition, or otherwise, shown himself to have sufficient legal status, or right in the property sought to be protected, to maintain the action.

"The complainant must show, not only the existence of his right, but he must affirmatively show that the acts sought to be restrained will be a violation thereof. There must be what the law regards as a legal injury, not a mere inconvenience." (22 Cyc. 756, citing numerous authorities.)

"An injunction will not be granted when the right to maintain the action is put in issue unless the petitioners clearly show that they are legally authorized to prosecute the action, and are entitled to the relief prayed." (*School District 112 v. Goodpasture et al.*, 13 Okla. 244, 74 Pac. 501.)

The petitioner in this case sues as trustee. He admits he claims as such under some kind of an assignment, that in no single particular complied with or attempted to comply with the law

relating to assignments. His allegation of trusteeship, and showing of interest in the subject-matter, upon which he bases his right to maintain the suit, is:

"Plaintiff further states that on or about —————— day of November, 1908, the said C. R. Bernard resigned his position as such trustee, which was duly accepted, and that the plaintiff herein was appointed as such trustee in the place of the said C. R. Bernard."

Does it appear affirmatively from this allegation that plaintiff had any legal rights in the property he was seeking to protect? The alleged assignment from Smith Son & Co. to. Bernard is a written instrument, and is attached to the petition. The assignment and the actions of the parties under it do not meet any of the requirements of the law; no inventory was taken or filed or recorded, no affidavit was made, and no bond was given. Section 244, Comp. Laws 1909, says:

"Until the inventory and affidavit required by sections 237 and 238 have been made, and the assignment has been duly recorded and the inventory filed, and the assignee has given a bond as required by the last section, an assignee for the benefit of creditors has no authority to dispose of the estate or convert it to the purposes of the trust."

Clearly the plaintiff has shown no legal status in himself as assignee, unless, as he claims, because of a ratification by defendant. His allegation of interest and legal status is not sufficient to sustain his petition, even on this theory. He says that assignee, Bernard, resigned, that his resignation was accepted, and he was appointed as trustee. To whom did Bernard resign? Who accepted his resignation? Who appointed plaintiff? Was it W. H. Smith Son & Co., or some court, or was it Bernard, who appointed him? Was his appointment in writing or by parol? The petition does not enlighten us. The court could not say, upon the showing made, that plaintiff had any legal right in the subject of this action that he could protect, even if this kind of suit would lie.

Third. The court was justified in dissolving the injunction, on plaintiff's theory of ratification, on the proof introduced. Taking the petition of plaintiff, and considering it as proof, although

it was not offered in evidence, the proof of defendant was more than sufficient to overcome it. Plaintiff contends that the acceptance of the credit on account by the Crossett Company was a ratification. Such act has been held in particular cases to be. But here it is nowhere shown when the payment was received, nor the circumstances under which it was made. It might have been made within the 20 days after the assignment was executed, given by the statute for perfecting the same and making and recording the inventory, giving bond, etc. During this period, the assignee would have had the right to possess the property. *Hockaday, Harmon & Roe v. Drye,* 7 Okla. 288, 54 Pac. 475. If he failed to comply with the law, the assignment became of no force and effect. But if a creditor, within this period given to perfect an assignment, received a payment expecting the parties to go on and comply with the law, and they failed utterly to do so, then could the question of ratification or estoppel be raised against such a creditor? We think not. So far as this record shows, this may have been the case; we do not know. Besides, the proof is positive that not only was the trusteeship not acquiesced in, but that its ratification was positively refused. This uncontradicted proof would destroy the legal inference of ratification relied on by plaintiff.

The court, under the pleadings and proof in this case, properly dissolved the injunction, and its action in so doing should be affirmed.

By the Court: It is so ordered.

All the Justices concur.