STEWART *v.* EGHIGIAN.

1. EVIDENCE—PECUNIARY CONDITION—PREJUDICE—SYMPATHY.

If otherwise irrelevant, the admission of testimony as to a litigant's wealth tends to create prejudice, as testimony of poverty tends to create sympathy, and in either case constitutes reversible error.

2. WITNESSES — CROSS-EXAMINATION — DIRECT EXAMINATION — WEALTH.

Cross-examination of defendant as to subjects which had been brought into the case upon direct examination was not error where they had some relation to the issue involved notwithstanding such cross-examination also tended to emphasize defendant's wealth.

3. ASSUMPSIT—PERSONAL SERVICES—GREAT WEIGHT OF EVIDENCE.

In action of assumpsit for personal services rendered defendant under a written contract, verdict for plaintiff was not against the great weight of the evidence.

4. VERDICTS AND FINDINGS—EFFECT OF GENERAL VERDICT—DETERMINATION AS TO DEFENSES.

A general verdict for plaintiff in action of assumpsit is a determination against all matters of defense, including set-off or counterclaim, set up by defendant.

5. SAME—ASSUMPSIT—GENERAL VERDICT—COUNTERCLAIM.

It is unnecessary that jury which gives a general verdict for plaintiff in action of assumpsit specifically find that defendant is not entitled to a verdict in any amount on his counterclaim.

6. SAME—ASSUMPSIT—GENERAL VERDICT—DIRECTED VERDICT NUNC PRO TUNC ON COUNTERCLAIM.

Where jury gave general verdict for plaintiff in action of assumpsit, it was not error for court to direct a *nunc pro tunc* verdict against defendant of no cause of action on his counterclaim where the issue was whether or not plaintiff performed or was ready to perform his contract.

7. APPEAL AND ERROR—FRAUD—QUESTION FOR JURY.

The submission to jury of question of fraud in inducement of contract upon which plaintiff sued was not reversible error in action of assumpsit even though pleadings and evidence did not justify submission of such matter to the jury, where instructions required jury to determine first whether or not plaintiff had established his case and upon its finding that he had, it had no occasion to consider question of fraud.

8. TRIAL—INSTRUCTIONS—REQUEST TO CHARGE—CONTRACT FOR PERSONAL SERVICES.

In action of assumpsit wherein plaintiff sought contract price for services rendered, failure of court to give instruction that defendant could terminate the contract if plaintiff failed to perform all services required by the terms thereof was not error where defendant failed to request the court to give specific instructions upon point of which complaint is now made (Court Rule No. 37, § 9 [1933]).

Appeal from Wayne; Brennan (John V.), J. Submitted October 10, 1945. (Docket No. 68, Calendar No. 43,173.) Decided December 3, 1945.

Assumpsit by William M. Stewart, doing business as Consulting Engineering Service, against Paul Eghigian, doing business as Paul's Motor & Machinery Supplies Company and as Vermont Tool & Manufacturing Company, on written contract for services. Cross action for money paid under said contract. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Levin, Levin, Garvett & Dill* (*Morris Garvett,* of counsel), for plaintiff.

*H. S. Derderian* and *I. Goodman Cohen* (*Sempliner, Dewey, Stanton & Honigman, Fred G. Dewey* and *Frederick G. Dewey,* of counsel), for defendant.

SHARPE, J. This is an action by plaintiff, William M. Stewart, doing business as Consulting En-

gineering Service, against defendant, Paul Eghigian, doing business as Paul's Motor & Machinery Supplies Company and as Vermont Tool & Manufacturing Company, for services claimed to have been rendered under a written contract.

The agreement relied upon by plaintiff was entered into January 26, 1943, and provides that plaintiff was to assist defendant in obtaining such machine work and other work incidental thereto as defendant could machine or process; to assist the defendant in the handling of all phases of priority problems, subject to directives of the War Production Board; to help and assist in obtaining subcontracts; to assist in expediting tools and production parts; and to give engineering advice. The agreement also provided that plaintiff was to receive a weekly salary of $100; and that the contract could be cancelled by either party upon written notice effective 90 days after such notice was given. Defendant paid the weekly salary for five weeks and then terminated the contract. Plaintiff brought action for $1,200 representing compensation for an additional 90 days under the cancellation clause in the contract. Defendant filed a cross declaration for $500 based upon the claim that plaintiff failed to render any service to defendant.

The cause came on for trial, a jury was impanelled who returned a verdict for plaintiff in the sum of $1,200. Thereafter, defendant made a motion for a new trial upon the ground that the verdict was against the great weight of the evidence; that the contract was contrary to public policy; and that the verdict as rendered was irregular and void in that no disposition was made by the jury of defendant's counterclaim.

The trial court denied the motion for a new trial and directed a verdict against defendant of no cause of action *nunc pro tunc*.

Defendant appeals and urges that it was error for the court to permit to be asked of witnesses questions designed to emphasize the wealth of defendant and relies upon *Forman* v. *Prudential Insurance Company of America,* 310 Mich. 145. In that case the action was to recover monthly payments for disability. The only issue was the disability of plaintiff. We there held that it was error to question plaintiff as to his financial affairs. We said (p. 156): "In this jurisdiction it has been quite uniformly held that, if otherwise irrelevant, admission of testimony as to a litigant's wealth tends to create prejudice the same as testimony of poverty tends to create sympathy; and in either case constitutes reversible error." In the case at bar, defendant was asked questions which tended to bring to the attention of the jury that his factory had 175,000 square feet of floor space; that his machinery business was one of the largest in this part of the country; and that at one time defendant purchased two machines paying $25,000 for them. We note that the testimony concerning the purchase of the building defendant now occupies was brought into the case upon direct examination. We also note that on direct examination defendant offered in evidence a cancelled check payable to plaintiff in the sum of $1,300 which represented a commission paid to plaintiff for the sale of two machines. It was not error to cross-examine defendant upon subjects that were brought out on direct examination and which had some relation to the issue involved.

We cannot say that the verdict was against the great weight of the evidence. The issue was whether plaintiff rendered services as specified in his contract. Plaintiff testified that he collected an account in the sum of $4,600; that he assisted in getting defendant's brother out of the army; that

he furnished defendant with blueprints and generally advised him on matters pertaining to his business. There is evidence in the record from which a jury could find in favor of plaintiff.

It is next urged that the verdict was ambiguous and incomplete as it failed to dispose of defendant's claim for money paid to plaintiff.

Section 14135, 3 Comp. Laws 1929 (Stat. Ann. § 27.829), provides:

"If the amount of the set-off duly established, be equal to the plaintiff's debt or demand, judgment shall be entered that the plaintiff take nothing by his action; if it be less than the plaintiff's debt or demand, the plaintiff shall have judgment for the residue only."

The next section, being 3 Comp. Laws 1929, § 14136 (Stat. Ann. § 27.830), provides:

"If there be found a balance due from the plaintiff in the action to the defendant, judgment shall be rendered for the defendant for the amount thereof."

Our court has never been called on to decide the precise question involved in this case, but the following authorities relate to the issue involved.

In 27 R. C. L. p. 855, in discussing the verdict of a jury where more than one issue is involved, it is stated:

"Thus a general verdict is sufficient in an action of assumpsit without finding specifically on a plea of set-off, or payment. In such cases the finding on one issue necessarily disposes of the rest."

In 38 Cyc. p. 1890, it is said:

"Upon a general denial and counterclaim pleaded, a general verdict for plaintiff is sufficient to dispose of both issues."

In *Guthrie* v. *Brown* (syllabus), 42 Neb. 652 (60 N. W. 939), it is held:

"When a defendant answers denying the allegations upon which plaintiff's claim is founded and at the same time pleading a counterclaim a general finding for the plaintiff is sufficient to dispose of the issues, both on the petition and on the counterclaim."

In *Harris* v. *Tiffany & Co.* (side note), 47 Ky. 225, it is held:

"A general verdict for the plaintiff is a valid finding by the jury, although set-off be pleaded; the general finding for the plaintiff being in effect a rejection of all set-off."

In *Heiferman* v. *Greenhut Cloak Co.*, 83 Misc. Rep. 435 ([syllabus] 145 N. Y. Supp. 142), it is held:

"A general verdict in favor of plaintiff is a determination against all matters of defense set up by defendant."

In *Fidelity & Deposit Co. of Maryland* v. *Verheyden*, 243 Mich. 544, a verdict was rendered against three defendants in an action of assumpsit. On motion of the attorney for plaintiff judgment was entered against defendants Verheyden and Pletsch and no cause for action as against defendant General Commodities, Incorporated. Under plea of the general issue, defendants Verheyden and the company gave notice of set-off. We there said: "The verdict of the jury eliminated the claim of set-off."

In the case at bar, the issue was whether plaintiff performed or was ready to perform his contract. If he did so, he was entitled to a verdict at the hands of the jury. If he did not so perform, then defendant was entitled to a verdict. The jury found in favor of plaintiff and by so doing necessarily found that defendant was not entitled to a verdict

in any amount. Under the circumstances in this case it was not necessary for the jury to find specifically that defendant was not entitled to a verdict in any amount. The verdict being sufficient as a finding of no cause for action against defendant disposes of defendant's claim that the trial court was in error in directing a *nunc pro tunc* verdict against the defendant of no cause of action.

It is also urged that the trial court was in error in instructing the jury as follows:

"And then if you find that the defendant has by his cross-declaration proven his case—he claims that he is entitled to $500—in accordance with the preponderance of evidence rule as you have heard it, and for which no consideration was obtained; in other words, if defendant has proven it was a fraudulent contract from the beginning and that the sum of [for?] which he is suing had been paid to the plaintiff by reason of such fraud, and that no service was performed by the plaintiff, then in that case, you will find for the defendant, the form of your verdict being: We find in favor of the defendant, fixing the sum at $500, the alleged amount that he claims here."

The above instruction must be considered in connection with the following instructions given to the jury:

"If the plaintiff did not perform the terms of the contract or was not ready and willing and able to perform the terms of the contract then, of course, the 90-day clause does not control, for, in that case the plaintiff would not be entitled to notice of any kind in order to have the contract terminated.

"And on the other hand, if the plaintiff was ready and willing and able to perform the terms of the contract, and did so perform, and the defendant, without reason, did discharge him, then the plaintiff is entitled to his money. The contract assumes that

each one will honestly carry out the obligation that rests upon him in accordance with the terms of the contract.''

Under the pleadings in this case and the evidence produced upon the trial, the question of fraud in the inducement of the contract should not have been submitted to the jury, but under the instructions given, the jury must have considered first the claim of plaintiff. The instruction complained of could only have been considered when and if the jury found that plaintiff had not established his case. The jury having found in favor of plaintiff had no occasion to consider the instruction complained of. Under such circumstances there was no prejudicial error in the instruction.

It is also urged that the court did not set forth fully and fairly the claims of the defendant in that the trial court failed to instruct the jury that defendant could terminate the contract if plaintiff failed to perform all services required by the terms of the contract. We note that defendant failed to request the court to give specific instructions upon the point now complained of. Court Rule No. 37, § 9 (1933), reads in part: ''The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested.''

See, also, *In re Einfeldt's Estate,* 286 Mich. 537; *People* v. *Petrosky,* 286 Mich. 397; *Grzelka* v. *Chevrolet Motor Car Co.,* 286 Mich. 141; and *Nezworski* v. *Mazanec,* 301 Mich. 43.

Under the above authority, we hold that there was no error as complained of by defendant.

The judgment is affirmed, with costs to plaintiff.

STARR, C. J., and NORTH, CARR, BUTZEL, BUSHNELL, BOYLES, and REID, JJ., concurred.